UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHOPMIST HILL FIRE DEPARTMENT,
                Plaintiff,

        v.                                      C.A. No. 09-531-ML

TOWN OF SCITUATE, a Municipal Corporation;
THEODORE J. PRZYBYLA, Treasurer, Town of
Scituate, in his official capacity; ROBERT BUDWAY,
President, Scituate Town Council, both individually and
in his official capacity as President of the Town Council,
CHARLES COLLINS JR., both individually and in his
official capacity as a Vice President of the Scituate Town
Council; DWIGHT FARRAR, both individually and in
his official capacity as a member of the Scituate Town
Council; JOHN F. WINFIELD JR., both individually and
in his official capacity as a member of the Scituate Town
Council; DAVID D'AGOSTINO both individually and in his
official capacity as a member of the Scituate Town Council;
DAVID L. HANNA both individually and in his official
capacity as a member of the Scituate Town Council;
BRENDA FREDERICKSON both individually and in her
official capacity as a member of the Scituate Town Council,
                Defendants.

MEMORANDUM AND ORDER

Plaintiff, Chopmist Hill Fire Department ("Plaintiff"), has filed a verified complaint

alleging that Defendants have wrongfully evicted it from a fire station in the Town of Scituate in

violation of federal and state law. The matter now comes before the Court on cross-motions for

summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is

denied and Defendants' motion for summary judgment is granted in part and denied in part.

## I. Standard of Review – Summary Judgment

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[1] An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in [the] rule — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." Thomas v. Metropolitan Life Insurance Co., 40 F.3d 505, 508 (1st Cir. 1994). The Court need not "credit purely conclusory allegations, indulge in rank speculation, or draw improbable inferences." National Amusements, 43 F.3d at 735. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991). Fed. R. Civ. P. 56 "requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment." Feliciano v. State of Rhode Island,

---

[1] Fed. R. Civ. P. 56 has been amended effective December 1, 2010. The Court, however, uses the version of the rule that was in effect when the motions were filed.

160 F.3d 780, 787 (1st Cir. 1998). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

## II. Background

Defendant, the Town of Scituate, Rhode Island ("Town") is a municipal corporation incorporated in 1730 by an act of the Rhode Island General Assembly. The Town does not have a municipal fire department; instead it relies upon non-profit, non-municipal fire companies to provide fire suppression and rescue services to the Town. Plaintiff, incorporated in 1950, is one of four fire companies providing such services to the Town. Plaintiff operates out of a fire station, located at 1362 Chopmist Hill Rd., which it leases from the Town. Plaintiff asserts that the current lease was executed in December 2000 and purports to cover the term from January 1, 2001, to December 31, 2016, with an annual rent of $1.00 per year. Plaintiff's Memorandum in Support of Motion for Summary Judgment, ("Plaintiff's Memo") Exhibit B. Plaintiff has paid the rent, in advance, through December 31, 2015. Id., Exhibit A, Dennis Gaffney Affidavit ("Gaffney Affidavit") at ¶ 5. Prior to the Fall of 2009, Chopmist Hill Fire Station was staffed by volunteers.

The dispute between the Town and Plaintiff began percolating in the fall of 2008. On September 3, 2008, the International Association of Firefighters ("IAFF") filed a petition for Investigation of Controversies as to Representation with the Rhode Island State Labor Relations

3

Board ("Board"), naming the Town and the Scituate Fire and Rescue Engineering Board as respondents. The IAFF sought to organize Plaintiff's emergency medical technicians. On or about February 2, 2009, Defendant Robert Budway ("Budway"), the President of the Town Council, issued a letter to all Town residents. In that letter, Plaintiff asserts that Budway alerted Town residents to the "potential destruction" of the Town's "volunteer rescue system." Plaintiff's Memo, Exhibit D. Budway stated that the situation arose as a result of a "small group of rescue volunteers announc[ing] that they [were] employees . . . ." Id. Budway informed Town residents that the Town intended to "vigorously contest" the petition and the IAFF's "baseless assertion" that the "volunteer rescue crew members are employees of the Town." Agreed Statement of Facts ("SOF") at 25. Budway also stated that the "people of Scituate have not [authorized] their government to hire rescue personnel. No one, no group has the right to foist themselves upon the people of Scituate as their self-appointed employees." Id. On August 6, 2009, the IAFF filed a request with the Board to withdraw the September 3, 2008, petition naming the Town and the Scituate Fire and Rescue Engineering Board as respondents and filed another petition naming Plaintiff as the sole respondent.

On August 28, 2009, WPRI Channel 12 published a news item titled "Johnston v. Scituate in Water Fight." SOF at 16. The news article reported that a "tipster" "caught" one of Plaintiff's fire trucks filling up with water at a Johnston water hydrant. SOF, Exhibit B. The news article also reported that the mayor of Johnston accused Plaintiff of "thievery." Id. On September 2, 2009, the Town Council held a special meeting, in executive session, to address, inter alia, the allegations raised in the Channel 12 news report. At or about that time, the Scituate Police Department and the Town solicitor began an inquiry into the matter.

On September 13, 2009, Plaintiff's members voted not to oppose the August 6, 2009, IAFF petition for representation. On September 14, 2009, Dennis Gaffney, the Chief of the Chopmist Hill Fire Department, and the IAFF agreed to recognize the IAFF as the exclusive bargaining agent for Plaintiff's emergency medical technicians who work, on a volunteer basis, more than twenty hours per week. On September 18, 2009, Gaffney met with Budway and informed him that Plaintiff had "voted voluntarily" to recognize the IAFF. SOF at 29. On September 21, 2009, the Town Council held a closed meeting to discuss "collective bargaining and litigation concerning organizational efforts of some volunteers" and the "allegations raised in the Channel 12 investigative report . . . regarding fire department use of water from the Town of Johnston . . . ." SOF at 30. Public notice of the September 21, 2009, meeting was posted on September 18, 2009.

On September 22, 2009, Gaffney received a letter from the Town Council requesting the return of all Town-owned equipment used by Plaintiff and its members. On the same date, a letter from the Town Council was hand-delivered, by a Scituate police officer, to Matthew Knowlton, the individual listed as Plaintiff's president on the Rhode Island Secretary of State website. In the letter, the Town informed Plaintiff that it was rescinding the lease for the fire station and instructed Plaintiff to vacate the premises within ten days of delivery of the letter.

Plaintiff contends that the Scituate police and the "Scituate EMA director" arrived at the fire station to effectuate its seizure. Plaintiff's Memo at 19. Three vehicles were removed from the station to the Town Department of Public Works; one vehicle, a "brush truck," and other equipment was secured by the Town and remained at the station. Gaffney contends that "shortly" after he received his letter, he went to an area near the fire station and observed Scituate police at

the station and that the station was surrounded with "yellow police tape." Gaffney Affidavit at ¶ 15.

On September 24, 2009, during a Town Council meeting called to discuss the removal of Plaintiff from the fire station, Budway stated that the "path we now find ourselves upon started almost two and one half years ago when a small group of Chopmist volunteers unilaterally declared themselves to be employees of the [T]own and immediately affiliated themselves with the IAFF." SOF at 23. The minutes of the meeting reflect that Budway also stated that, a few years earlier, he had met with the chiefs of all of the volunteer fire departments in the Town and that the chiefs had informed him that they were "committed to the volunteer system." SOF at 26. At some point after the meeting with the chiefs, Gaffney informed him that he "could not go on with this." Id. The minutes reflect that Budway informed those attending the meeting that "[w]ithin days, it came out that Chopmist was attempting to unionize." Id. Budway concluded by stating that the decision concerning whether or not the Town had a paid or volunteer fire and rescue department should not be made by a "few people." Id.

On September 30, 2009, in a press release, Budway stated that the

Chopmist Hill [F]ire and Rescue organization has transformed itself from a purely volunteer organization to one which is at best inconsistent with the terms of its lease agreement with the [T]own; the Chopmist Hill Fire and Rescue Organization has exhibited a pattern of behavior that demonstrates a failure of leadership . . . . The Chopmist Hill Fire and [R]escue organization has taken steps which may be inconsistent with its own corporate charter and by laws [sic], which demonstrates a functional deficiency of the organization and its own un-clear [sic] future.

SOF at 24. During 2009, the Town Council met in closed session approximately eleven times to discuss "collective bargaining," "unionization efforts," and "litigation." SOF 39-40. On October 12, 2009, Plaintiff requested that the Town give it notice of any violation of the terms of the lease

and Plaintiff offered to remedy any alleged violation within 10 days. Defendants did not respond to Plaintiff's request.

On November 3, 2009, the Rhode Island Superior Court entered an order, by which, inter alia, it allowed Plaintiff back into the fire station but ordered that Plaintiff's fire suppression and emergency medical services equipment at the fire station remain in the control of the North Scituate Fire Department to maintain public safety in the Chopmist Hill area. The matter was removed to this Court on November 6, 2009.

### III. Analysis

Plaintiff alleges a violation of 42 U.S.C. § 1983 and state law claims of breach of lease, intentional interference with a potential contractual relationship, libel, slander, malicious prosecution, conversion, replevin and a violation of the Rhode Island Open Meetings' Law.[2] Because several of the claims hinge on the validity of the lease, the Court starts its analysis with Plaintiff's claim that Defendants breached the lease.

### A. Breach of Lease

The lease for the fire station was executed in December 2000 with a purported term from January 2001 to December 31, 2016. Plaintiff agreed to use the station "only for the conduct of a volunteer fire department and rescue department . . . ." Plaintiff's Memo, Exhibit 3. It is undisputed that the term of the lease extended beyond the unexpired terms of the members of the Town Council who executed it. Defendants argue that the lease is void.

Under well-established Rhode Island law, "any contract made by a governmental

---

[2]At the hearing on the motions for summary judgment, Plaintiff agreed that the claims of malicious prosecution and violation of the Rhode Island Open Meetings' Law may be dismissed.

authority involving the performance of a <u>governmental function</u> that extends beyond the unexpired terms of the governmental officials executing the contract is <u>void</u> because such an agreement improperly ties the hands of subsequent officials." <u>Rhode Island Student Loan Authority v. NELS, Inc.</u>, 550 A.2d 624, 626 (R.I. 1988) (emphasis added); <u>Vieira v. Jamestown Bridge Commission</u>, 91 R.I. 350, 163 A.2d 18 (1960); <u>Parent v. Woonsocket Housing Authority</u>, 87 R.I. 444, 143 A.2d 146 (1958); <u>see generally</u> <u>Casa DiMario, Inc. v. Richardson</u>, 763 A.2d 607, 610 (R.I. 2000) (citing <u>Parent</u> and noting that the town council did not have authority to bind future town councils by promising not to enforce yet-to-be enacted ordinances).

When a municipality enters into a lease for the use of property exclusively for fire protection and rescue services, it is performing a governmental function. <u>See</u> <u>Buckhout v. City of Newport</u>, 68 R.I. 280, 285, 27 A.2d 317, 320 (1942) ("[t]here can be no question that a city is acting in its governmental capacity when it purchases and uses land . . . for fire protection purposes"); <u>Flynn v. King</u>, 433 A.2d 172, 175 (R.I. 1981) ("[f]ire protection is a governmental function that 'substantially affects' every resident and property owner"); <u>Nunes v. Town of Bristol</u>, 102 R.I. 729, 734, 232 A.2d 775, 778 (1967) ("a municipality when engaged in the construction or expansion of a fire station, is performing in a governmental capacity"). Accordingly, because the lease at issue here exclusively involves a governmental function and because its term extends beyond the term of the members of the Town Council who executed it, the Court finds that the lease is void.

Plaintiff argues, however, that Defendants ratified the lease by accepting Plaintiff's services for a period of nine years and by accepting payment and/or failing to return payment. A void contract, however, unlike a voidable contract, is a nullity and is not subject to ratification.

See McAleer v. Angel, 19 R.I. 688, 36 A. 588 (1897) (ultra vires contract is void and cannot be ratified by performance or by acceptance of benefit); see also 1 Richard A. Lord, Williston on Contracts § 1:20 at 73-74 (4th ed. 2007) ("if a promise is void, it creates no legal obligation and the promisor is without power to ratify [the] promise"). Because the lease is void and a legal nullity, it is not subject to ratification. Defendants' motion for summary judgment on the breach of the lease claim is therefore granted and Plaintiff's motion on this claim is denied.

## B. Constitutional Claims

The complaint alleges a violation of 42 U.S.C. § 1983. To maintain a cause of action under 42 U.S.C. § 1983, Plaintiff must show (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived Plaintiff of rights secured by the Constitution or laws of the United States. Harrington v. City of Nashua, 610 F.3d 24 (1st Cir. 2010). Plaintiff claims Defendants violated its rights pursuant to the First, Fourth, and Fourteenth Amendments.

## 1. First Amendment

Plaintiff claims that Defendants have impermissibly interfered with the First Amendment "unionization rights" of Plaintiff and its members.[3] Plaintiff's Memo at 31. Plaintiff, however, candidly admits that it could find no authority to support a claim of interference with an employer's First Amendment unionization rights by a *third-party* government entity. Defendants argue that they did not interfere with any purported First Amendment right of Plaintiff.

---

[3]Plaintiff argues that it has third party standing to litigate a claim on behalf of its members. "Due to prudential limitations on standing, a party, under ordinary circumstances, may not assert the First Amendment rights of a third party." Coggeshall v. Massachusetts Board of Registration of Psychologists, 604 F.3d 658, 666 (1st Cir. 2010). While courts "have carved an exception to this rule for cases in which a third party is unable to assert [his or] her own rights," Plaintiff has presented no evidence to show that its members were hindered in asserting their own rights. Id. at 667.

Employers have a First Amendment right to engage in noncoercive speech concerning unionization. Chamber of Commerce of the United States of America v. Brown, 554 U.S. 60 (2008). Plaintiff contends that Defendants interfered with its "unionization efforts" by evicting Plaintiff from the fire station. Plaintiff's Memo at 33. Plaintiff's First Amendment argument appears at pages 31-35 of its memorandum and that argument is somewhat convoluted. In essence, Plaintiff argues that Defendants interfered with its First Amendment right to advocate for a union. See generally Thomas v. Collins, 323 U.S. 516 (1945). Plaintiff contends that Defendants' constitutionally impermissible interference is shown by (1) Budway's admission, during the September 24, 2009, Town Council meeting, that the Town would be committing an unfair labor practice if the Town interfered with Plaintiff's unionization effort; (2) Defendants' scheduling and holding a Town Council meeting immediately after Budway became aware that the Plaintiff had recognized the union; and (3) Defendants' evicting Plaintiff from the fire station based on their "dislike of unions" but "falsely assert[ing]" that they were motivated to evict Plaintiff because of the "baseless" Channel 12 report. See Plaintiff's Memo at 35.

Plaintiff's contention that Defendants violated its First Amendment rights is either based on inadmissible evidence and/or is wholly conclusory and speculative. See generally National Amusements, 43 F.3d at 735. Moreover, it is undisputed that Plaintiff exercised its First Amendment right to advocate for the formation of a union and a union was recognized; thus, Plaintiff has suffered no injury. See Ramirez v. Sanchez Ramos, 438 F.3d 92 (1st Cir. 2006) (three pillars of constitutional standing are injury in fact, causation, and redressability); Sutliffe v. Epping School District, 584 F.3d 314, 325 (1st Cir. 2009) ("injury in fact is an invasion of a legally protected interest that is both concrete and particularized, . . . and actual or imminent, not

conjectural or hypothetical") (internal quotation marks and citations omitted); see generally

Hobbs v. Hawkins, 968 F.2d 471 (5th Cir. 1992) (First Amendment rights of employees to join a

union and to advocate in favor of unionization not abridged when employees were, inter alia, not

prohibited from joining union). Plaintiff has failed to show that it has suffered some actual or

threatened injury. Defendants' motion on this claim is therefore granted and Plaintiff's motion

on this claim is denied.

## 2. Fourth Amendment

### a. The Leased Premises (Fire Station)

Plaintiff, relying on Soldal v. Cook County, Illinois, 506 U.S. 56 (1992), argues that

Defendants' use of the Scituate Police Department in the "self help eviction" of Plaintiff from the

fire station constitutes a violation of Plaintiff's Fourth Amendment rights. Plaintiff's Memo at

52. 42 U.S.C. § 1983 protects citizens from state deprivations of their constitutional rights,

including the right to be free from unreasonable seizures. Maldonado v. Municipality of

Barceloneta, 682 F. Supp. 2d 109 (D.P.R. 2010). A corporation is entitled to some protection

against unreasonable search and seizures. G.M. Leasing Corp. v. United States, 429 U.S. 338,

353 (1977). "Expectations of privacy and property interests govern the analysis of Fourth

Amendment search and seizure claims." United States v. Padilla, 508 U.S. 77, 82 (1993) (per

curiam). A "seizure of property . . . occurs when there is some meaningful interference with an

individual's possessory interests in that property." Soldal, 506 U.S. at 61 (emphasis added)

(internal quotation marks and citation omitted). Where a party does not have a possessory

interest in the property at issue, there is no seizure for purposes of the Fourth Amendment.

Prestige Restaurants and Entertainment, Inc. v. Bayside Seafood Restaurant, Inc., No. 09-23128-

CIV, 2010 WL 680905 (S.D. Fla. Feb. 23, 2010).

Plaintiff's reliance on Soldal is unavailing. In Soldal the Supreme Court held that participation of a law enforcement officer in an improper eviction of the owner of a mobile home from a mobile home park constitutes a seizure in violation of the Fourth Amendment. See Thomas v. Cohen, 304 F.3d 563 (6th Cir. 2002). The seizure in Soldal was a rather dramatic physical seizure and removal of a mobile home. Soldal, 506 U.S. at 58-60. The Supreme Court noted that Soldal did not involve a "garden-variety" landlord-tenant or commercial dispute. Id. at 72.

Plaintiff's claim is predicated on Plaintiff's asserted leasehold interest. As noted above, however, the Court has concluded that the lease is void. Consequently, any purported violation of the Fourth Amendment cannot be premised on an interest in the leasehold. Plaintiff has failed to develop any argument supporting a claim of a possessory interest in the fire station outside of the leasehold. See generally United States v. Zannino, 895 F.2d 1 (1st Cir. 1990) (issues unaccompanied by some effort at developed argumentation are deemed waived). Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim with respect to seizure of the fire station is therefore granted and Plaintiff's motion on this claim is denied.

b. The Personal Property

The Town seized a 1987 fire engine, a 2005 fire engine, a 2007 rescue vehicle, and a 1999 brush truck. The Town is the titled owner of the two fire engines and the 2007 rescue vehicle. The 1999 brush truck is titled in the names of both the Town and Plaintiff. The Town pays for the insurance on all of the vehicles and it is identified as the loss payee on the insurance policies.

12

"Under the motor vehicle laws of [Rhode Island] a title certificate is prima facie evidence that the party named on the certificate owns the vehicle to which it applies." Serra v. Ford Motor Credit Co., 463 A.2d 142, 145 (R.I. 1983); R.I. Gen. Laws § 31-3.1-7. At the hearing, Plaintiff conceded that the Town owns the 1987 and 2005 fire engines and the 2007 rescue vehicle. Plaintiff, however, asserts that the three vehicles were purchased by the Town with funds obtained through bond issues. Plaintiff argues that it has a possessory interest in the vehicles because the vehicles were purchased by the Town, specifically for *Plaintiff's use*, with funds authorized by the citizens of the town. Plaintiff, however, has not presented admissible evidence to support its contention that the Town funds were to be used to buy the vehicles *solely* for use by Plaintiff. Moreover, Plaintiff cites no authority that stands for the proposition that it has a Fourth Amendment protected possessory interest in the vehicles.

The Court is mindful that the Fourth Amendment does not protect possessory interests in all kinds of property. See Higgins v. Penobscot County Sheriff's Department, No. Civ. 04-157-B-W, 2005 WL 1331200 (D. Me. June 2, 2005), report and recommendation adopted, 2005 WL 1961369 (D. Me. Aug. 15, 2005), aff'd, 446 F.3d 11 (1st Cir. 2006) (per curiam). The vehicles were purchased with Town funds to be used for fire suppression and rescue services for the benefit of the Town. Plaintiff does not have a possessory interest in the 1987, 2005, and 2007 vehicles; consequently its Fourth Amendment claim with respect to those vehicles fails. Defendants' motion for summary judgment with respect to these vehicles is therefore granted and Plaintiff's motion with respect to these vehicles is denied.

Co-owners "can . . . avail themselves of the Fourth Amendment's protections." United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007). As noted supra, a title certificate is prima

facie evidence of ownership. Serra, 463 A.2d at 145. The title to the brush truck is in the name of both the Town and Plaintiff. Plaintiff maintains that the brush truck was purchased with non-municipal funds from Plaintiff's treasury and is therefore the sole property of Plaintiff. Defendants contend, however, that Plaintiff gave the brush truck to the Town. Defendants have presented an affidavit which raises genuine issues of fact concerning the ownership of the brush truck. Because there are genuine issues of fact concerning whether or not Plaintiff has a possessory interest sufficient to invoke the protections of the Fourth Amendment in the brush truck, summary judgment on the Fourth Amendment claim with respect to the brush truck is denied.

Plaintiff also argues that other personal property/equipment was illegally seized by the Town from the fire station. Plaintiff contends that non-municipal funds were used to purchase gear for firefighters and other assorted personal property/equipment. Defendants argue that the Court must look to the purpose for which the funds were procured by Plaintiff in order to determine whether Plaintiff has a protected possessory interest in the property.

Gaffney's affidavit raises genuine issues of material fact concerning the extent of personal property/equipment purchased by Plaintiff with non-municipal funds. Consequently, fact issues remain concerning whether Plaintiff has a protected possessory interest in certain personal property/equipment (non-vehicle) seized by the Town. As a result, the motions for summary judgment pertaining to the personal property/equipment are denied.

### 3. Fourteenth Amendment

In its summary judgment memorandum, Plaintiff alleges that Defendants "wrongfully evicted [Plaintiff] from its leasehold without cause and without due process." Plaintiff's Memo

at 46. Plaintiff did not, however, develop that "argument." See generally id. As a result, Defendants argue that this Court should find that Plaintiff has waived a due process claim or that the complaint did not include such a claim. In its reply memorandum, Plaintiff directed this "Court's attention . . . to pages 48 to 51 of" its summary judgment memorandum contending that "due process is discussed at length." Plaintiff's Reply Memorandum at 8 (emphasis added). The Court has reviewed those pages and does not find any due process argument, let alone one discussed "at length."

At oral argument, Plaintiff's counsel stated that Plaintiff raised a due process argument by citing Fuentes v. Shevin, 407 U.S. 67 (1972), in its objection to Defendant's motion. The extent of Plaintiff's due process "argument" in its objection was a cite to Fuentes coupled with the allegation that Defendants did not give Plaintiff a pre or post-deprivation hearing with respect to the seizure of "equipment" and, as a result, violated due process. Plaintiff's Objection to Defendants' Motion for Summary Judgment at 17. Plaintiff's Fourteenth Amendment due process "argument" consists of the unengaged umbrella approach – lay out a very general and cursory "argument" in the hopes that it pops open and covers the proper areas. "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . or else forever hold its peace." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal quotation marks and citation omitted) (emphasis added).

Although the Court finds that Plaintiff has waived its due process argument, out of an abundance of caution, the Court addresses the claim. In order to establish a procedural due process claim under § 1983, Plaintiff must show that it has a property interest as defined by state law and that Defendants, "acting under color of state law, deprived it of that property interest

without constitutionally adequate process." <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1 (1st Cir. 2007) (internal quotation marks and citation omitted). "The Fourteenth Amendment requires that the deprivation of a property interest be preceded by notice and opportunity for hearing appropriate to the nature of the case." <u>Maldonado</u>, 682 F. Supp. 2d 128 (internal quotation marks and citation omitted). "The Fourteenth Amendment's protection of 'property,' however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to any <u>significant</u> property interest. . . ." <u>Fuentes</u>, 407 U.S. at 86 (emphasis added) (internal quotation marks and citation omitted); <u>see also</u> <u>In re Pontes</u>, 310 F. Supp. 2d 447 (D.R.I. 2004) (due process clause protects significant property interests).

In order to succeed on its claim with respect to the fire station, Plaintiff must first establish that it has a property interest in the continued occupancy of the fire station. Because the lease is void, however, Plaintiff does not have any property interest in the leasehold. As noted supra, Plaintiff failed to develop any argument that it had a property interest in the fire station outside of the lease. Consequently, Plaintiff's due process claim with respect to the fire station fails. Thus, Defendants' motion for summary judgment on Plaintiff's due process claim with respect to the fire station is therefore granted and Plaintiff's motion is denied.

The 1987, 2005, and 2007 vehicles were purchased with Town funds to be used for firefighting and rescue purposes for the benefit of the Town. Plaintiff does not point to any state law which gives Plaintiff a significant property interest, i.e., a constitutionally protected interest, in vehicles purchased with Town bond funds. The Court finds that Plaintiff does not have a constitutionally protected property interest in the 1987, 2005, and 2007 vehicles. Defendants' motion for summary judgment with respect to any due process claim with respect to these

vehicles is therefore granted and Plaintiff's motion is denied. The motions with respect to the brush truck and the other personal property/equipment are denied because there are material facts in dispute concerning whether Plaintiff has a constitutionally protected property interest in these items.

### C. Conversion

Plaintiff alleges that Defendants converted its vehicles and personal property/equipment. "To maintain an action for conversion, [a] plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." Narragansett Electric Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006) (internal quotation marks and citation omitted) . "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." Id. (emphasis added) (internal quotation marks and citation omitted). "The focus of inquiry is whether [a] defendant has appropriated to his [or her] own use the chattel of another without the latter's permission and without legal right." DeChristofaro v. Machala, 685 A.2d 258, 262 (R.I. 1996) (emphasis added) (internal quotation marks and citation omitted). To sustain a conversion action, Plaintiff must prove ownership or possessory interest in the property at the time of conversion. Id. at 263.

The record reflects that the Town owns the 1987 and 2005 fire engines and the 2007 rescue vehicle and that Plaintiff does not have a possessory interest in those vehicles. Thus, with respect to those vehicles, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied. Because there are genuine issues of material fact concerning the ownership of and/or possessory interests in the 1999 brush truck and the other personal property/equipment,

the motions for summary judgment are denied with respect to those claims.[4]

### D.  Intentional Interference With Prospective Contract Relations

Plaintiff alleges that "Defendants' actions on September 22[], 2009[,] and thereafter[]" have interfered with its ability to negotiate a labor contract with the IAFF.  Plaintiff's Memo at 64.  Plaintiff contends that as a result of Defendants' actions, Plaintiff "for all practical purposes has been shut down."  Id.

In order to succeed on this claim, Plaintiff must establish "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff."  Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007) (internal quotation marks and citation omitted).  Plaintiff must show an "intentional and improper act of interference, not merely an intentional act of interference."  Id. (internal quotation marks and citation omitted).  There must be "something illegal about the means employed."  Id. at 99 (internal quotation marks and citation omitted).

There is no evidence in the record that shows that Defendants have done anything to

---

[4]Plaintiff also petitions the Court to issue a writ of replevin ordering Defendants to return the vehicles and other personal property/equipment that Defendants seized.  Plaintiff, however, fails to cite any authority to support its replevin action.  "Replevin is an action for the repossession of personal property wrongfully taken or detained by the defendant. . . ."  Gem Plumbing & Heating Co., Inc. v. Rossi, 867 A.2d 796, 806 n.14 (R.I. 2005) (internal quotation marks and citation omitted).  Fed . R. Civ. P. 64 makes replevin available in this Court pursuant to Rhode Island state law.  Vineberg v. Bissonnette, 529 F. Supp. 2d 300 (D.R.I. 2007), aff'd, 548 F.3d 50 (1st Cir. 2008); Fed. R. Civ. P. 64.  A motion for a writ of replevin is granted upon a showing that there is (1) a probability of a judgment being rendered in favor of the plaintiff and (2) a "substantial need for the transfer of possession of the property pending adjudication of the claim."  Vineberg, 529 F. Supp. 2d at 306 (internal quotation marks and citation omitted).  "An action in replevin merely adjudicates who has the superior right to possession of goods."  Id. (internal quotation marks and citation omitted).  Based upon the Court's findings noted above, with respect to the 1987 and 2005 fire engines and the 2007 rescue vehicle, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied. With respect to the 1999 brush truck and other personal property/equipment, the motions for summary judgment are denied.

interfere with Plaintiff's ability to negotiate a contract with the union. Plaintiff remains free to negotiate a labor relationship, i.e., Plaintiff and the IAFF may engage in collective bargaining to form a labor contract. Defendants' motion for summary judgment on this claim is therefore granted and Plaintiff's motion on this claim is denied.

### E. Defamation

In the complaint, Plaintiff alleges that Budway's "written" and "oral statements" constitute defamation. Complaint at ¶¶ 70, 73. Defendants contend that Budway's statements are not defamatory, however, Defendants also argue that even if the statements are defamatory, Budway is protected by a qualified privilege.

In its memorandum supporting its motion, Plaintiff identifies five statements allegedly made by Budway that it argues are defamatory. See Plaintiff's Memo at 66-67. Plaintiff alleges that Budway defamed Plaintiff in the September 30, 2009, press release when he said that Plaintiff "has taken steps which may be inconsistent with its own corporate charter and by laws [sic], which demonstrate a functional deficiency of the organization and its own un-clear [sic] future." Plaintiff's Memo at 67; Complaint at ¶ 14(b). Plaintiff also contends that Budway defamed it during the September 24, 2009, Town Council meeting when he allegedly stated:

1. That the fire station was in a "disgraceful condition . . . replete with a lack of basic housekeeping." Complaint at ¶ 32.

2. That "the Department filled privately owned swimming pools in Scituate with water obtained from systems outside Scituate and charged Scituate residents for pool filling. . . ." Complaint at ¶ 48.

3. That there were "allegations of fuel removal from the Department of Public Works for

personal or other than [D]epartment related use." Id.

    4. That there were "[a]llegations of threats to withhold life preservation EMS services by members of the Chopmist Department." Plaintiff's Memo, Exhibit L.[5]

    To prevail on a defamation action Plaintiff must prove "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm." Marcil v. Kells, 936 A.2d 208, 212 (R.I. 2007) (internal quotation marks and citation omitted). To be actionable per se – without proof of special damages – the false statement must impute a criminal offense, a loathsome disease, a "matter incompatible with . . . business, trade, profession, or office" or serious sexual misconduct. Id. (internal quotation marks and citation omitted). In order to show that a statement is false and defamatory, Plaintiff must show that the statement is "false and malicious, imputing conduct which injuriously affects a man[']s reputation, or which tends to degrade him in society or bring him into public hatred and contempt. . . ." Id. (internal quotation marks and citation omitted). Whether the meaning of a communication is defamatory is a question of law. Id. at 214.

    When evaluating an allegedly defamatory statement, the Court must take into account the "context of the statement in which the publication occurs and the plain and ordinary meaning of the words in the community in which the publication occurred." Alves v. Hometown

---

[5]In support of this statement, Plaintiff points to Plaintiff's Exhibit L, which Plaintiff alleges is the statement read by Defendant Budway during the September 24, 2009, Town Council Meeting. The document, however, is not accompanied by an affidavit or other evidence which would support its admissibility. However, at the hearing, defense counsel referred to Plaintiff's Exhibit L in support of its qualified privilege argument. Thus, for the purposes of this motion, the Court presumes that the parties agree that Exhibit L is admissible.

Newspapers, Inc., 857 A.2d 743, 751 (R.I. 2004) (internal quotation marks and citation omitted). The "decisive inquiry, however, is what the person . . . to whom the communication was published reasonably understood as the meaning intended to be expressed." Budget Termite & Pest Control, Inc. v. Bousquet, 811 A.2d 1169, 1172 (R.I. 2002) (internal quotation marks and citation omitted). Truth is an absolute defense to defamation. Lundgren v. Pawtucket Firefighters Association Local No. 1261, 595 A.2d 808 (R.I. 1991); R.I. Gen. Laws § 9-6-9. A corporation may bring a defamation action. See generally Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Co., 783 A.2d 398 (R.I. 2001).

Even if a plaintiff is able to prove the elements of a defamation claim, the publisher may be immunized from liability if he or she is privileged to make the statement. Trainor v. The Standard Times, 924 A.2d 766 (R.I. 2007). Whether or not a statement falls within a recognized privilege is a question of law. Id. A publisher of a statement has a qualified privilege to make the statement if the publisher "makes the statement[] in good faith and reasonably believes that he has a legal, moral, or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s], or certain interests of the public." Kevorkian v. Glass, 913 A.2d 1043, 1048 (R.I. 2007) (internal quotation marks and citation omitted). In order to find the privilege, a reciprocity of duty must exist between the publisher and the recipient – such that the recipient has an interest in receiving the information and the publisher has an interest in communicating it. Avilla, 935 A.2d at 96. The qualified privilege, however, can be overcome if Plaintiff shows that the "person making the defamatory statement[] acted with ill will or malice." Kevorkian, 913 A.2d at 1048 (internal quotation marks and citation omitted).

The Rhode Island Supreme Court has "ordinarily . . . left the determination of the primary

motivation of a defendant as a question of fact, not to be dealt with on summary judgment."

Avilla, 935 A.2d at 96. However, once the privilege is established,

> [i]t then becomes the defamed person's obligation to prove express malice. To support his burden he must show that the primary motivating force for the communication was the publisher's ill will or spite toward him. Where, however, the causative factor was the common interest, a publisher's resentment toward the person defamed is immaterial and any incidental gratification is without legal significance.

Id. (emphasis added) (internal quotation marks and citation omitted).

Budway's alleged statement that the fire station was in a disgraceful condition replete with lack of basic housekeeping is not defamatory. Even if it were false, it certainly does not impute any conduct that injuriously impact's Plaintiff's reputation, or tends to degrade Plaintiff or cause public hatred or contempt. See Marcil, 936 A.2d at 208.

With respect to the remaining statements, for purposes of this motion, the Court assumes without deciding, that Budway made the statements and that they are defamatory. The record reflects, however, that taken in proper context, Budway was privileged to make the statements. The September 24, 2009, Town Council meeting and the September 30, 2009, press release addressed the seizure of the fire station. At the Town Council meeting, Budway made the allegedly defamatory statements to explain to those in attendance the Town "Council's actions in the face of the . . . general and specific allegations relative to inappropriate use of fire apparatus and properties owned by the Town . . . ." Plaintiff's Memo, Exhibit L at 3 (emphasis added). Each allegedly defamatory statement made by Budway during the meeting concerned his reporting of certain allegations to those in attendance and to explain the Council's actions in removing Plaintiff from the station. Budway explained that the Channel 12 news story about

"[w]ater being removed from the hydrant system of the Town of Johnston . . . precipitated the Council's inquiry into the matter." Id. Including the allegations noted above, Budway also reported that "allegations of water removed from the hydrant system of the Town of Smithfield remains an allegation and is currently under investigation." Id. He also informed those attending the meeting that a

> violation of the public trust is serious. The Council has an absolute obligation to look into allegations that demonstrate that a violation of public trust has occurred and to take whatever action is necessary to stem those violations, especially if the allegations pertain to either a pattern of activity or ongoing activities that violate that trust.

Id. at 6. Budway noted that a "police investigation needs to be completed . . . with . . . due haste" and encouraged "the public to come forward to the Police Department with any information that might contribute to the ongoing investigation . . . ." Id. Budway reminded those attending the meeting that the

> Scituate Fire and EMS services are provided by a dedicated group of volunteers . . . [and] the taxpayers fund the operations by providing equipment and vehicles. However, if the vehicles and/or equipment, including the premises where the vehicles and equipment are located are implicated in or involved in allegations of civil or criminal misconduct, the Council has an obligation to look into the matter.

Id. (emphasis added). Budway also informed those in attendance that the Town's role in providing firefighting and rescue services was to "provide funding . . . consistent with state law" and if those funds were being misused the Town Council had a duty to protect taxpayer funds. Id. at 7. The basis for the press release and the statements made by Budway at the Town Council meeting was to inform citizens of the Town the reasons why Plaintiff was removed from the fire station and the steps that the Town was taking to ensure adequate fire suppression and emergency medical services in the area previously serviced by Plaintiff. Thus, the Court concludes that

23

Budway was privileged to make the statements because they were made to protect the "interests of the public." Kevorkian, 913 A.2d at 1048.

The critical issue in this analysis, however, is "whether [P]laintiff [has] pointed to anything tangible that would create a genuine issue regarding whether the privilege was abrogated by . . . [Budway's] conduct. . . ." Avilla, 935 A.2d at 95. Plaintiff argues that "there is no question that [the statements] were made maliciously and in bad faith . . . ." Plaintiff's Memo at 66. Plaintiff must, however, point to some admissible evidence showing that Budway's primary motivation in making the statements was malicious. Avilla, 935 A.2d at 95-96. Plaintiff does not expand on its contention that there is "no question" that Budway's statements were made with ill will or malice nor does Plaintiff direct the Court to any evidence to show that Budway's primary motivation was malice. See Plaintiff's Memo at 66-67. Defendants' motion for summary judgment on this claim is therefore granted and Plaintiff's motion is denied.

## IV. Conclusion

In summary, Defendants' motion is granted on the breach of the lease claim; Defendants' motion is granted on the First Amendment claim; Defendants' motion is granted on the Fourth Amendment and Fourteenth Amendment claims with respect to the fire station and the 1987 and 2005 fire engines and the 2007 rescue vehicle; Plaintiff's and Defendants' motions are denied on the Fourth Amendment and Fourteenth Amendment claims with respect to the 1999 brush truck and the other personal property/equipment; Defendants' motion is granted on the conversion and replevin claims with respect to the 1987 and 2005 fire engines and the 2007 rescue vehicle; Plaintiff's and Defendants' motions are denied on the conversion and replevin claims with respect to the 1999 brush truck and the other personal property/equipment; Defendants' motion is

granted on the intentional interference with prospective contractual relations claim; and finally,

Defendants' motion is granted on the defamation claim.  In all other respects, Plaintiff's motion

is denied.


SO ORDERED.

Mary M. Lisi
Chief United States District Judge
January 18, 2011.