UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


CHOPMIST HILL FIRE DEPARTMENT,
        Plaintiff,

v.                                                           C.A. No. 09-531-ML

TOWN OF SCITUATE, a Municipal Corporation;
THEODORE J. PRZYBYLA, Treasurer, Town of
Scituate, in his official capacity; ROBERT BUDWAY,
President, Scituate Town Council, both individually and
in his official capacity as President of the Town Council,
CHARLES COLLINS JR., both individually and in his
official capacity as a Vice President of the Scituate Town
Council; DWIGHT FARRAR, both individually and in
his official capacity as a member of the Scituate Town
Council; JOHN F. WINFIELD JR., both individually and
in his official capacity as a member of the Scituate Town
Council; DAVID D'AGOSTINO both individually and in his
official capacity as a member of the Scituate Town Council;
DAVID L. HANNA both individually and in his official
capacity as a member of the Scituate Town Council;
BRENDA FREDERICKSON both individually and in her
official capacity as a member of the Scituate Town Council,
        Defendants.

## DECISION AND ORDER

### I. Procedural Background

In late 2009, Chopmist Hill Fire Department, ("Plaintiff"), filed a verified complaint alleging that Defendants had wrongfully evicted Plaintiff from a town-owned fire station and seized its property in violation of federal and state law. The parties filed cross-motions for summary judgment and the Court granted in-part and denied in-part Defendants' motion and denied Plaintiff's motion. As a result of the Court's ruling, four claims survived summary judgment: Plaintiff's Fourth and Fourteenth Amendment claims and state law claims of

1

conversion and replevin with respect to certain personal property.[1] As to each of these claims, Plaintiff must show that it had a legally cognizable ownership or possessory interest in the property seized by Defendants.

In early December 2011, the Court commenced a bench trial on the claims. Plaintiff began its case with testimony from Dennis Gaffney, ("Gaffney") the Chief of the Chopmist Hill Fire Department. During Gaffney's testimony, however, the Court decided to conference the matter with the parties. As a result of the conference, the parties agreed to submit the matter on an agreed statement of facts.

The parties have now submitted an agreed statement of facts and post-trial memoranda; thus, the matter is ripe for decision. The Court's findings of fact and conclusions of law are set forth below.

## II. Facts

Plaintiff is a Rhode Island non-profit organization incorporated in 1950. The purpose of the corporation is "the preservation and protection of property from and during fires as may occur in the Town of Scituate and vicinity." Stipulation, Agreed Statement of Facts at ¶1; Docket # 35 ("Stipulation"). Defendant, the Town of Scituate ("Scituate" or "Town") is a municipal entity in the State of Rhode Island governed by an elected town council. Scituate does not have a municipal fire department; instead it relies upon non-profit, "volunteer" non-municipal fire companies to provide fire suppression and emergency medical services to the Town. In

---

[1] The reader is directed to Chopmist Hill Fire Department v. Town of Scituate, 780 F. Supp. 2d 179 (D.R.I. 2011), for background on Plaintiff's claims and the disposition of the summary judgment motions. For purposes of this decision, the Court will only summarize the facts that are pertinent to an analysis of the issues presently before the Court.

2

September 2009, the Town informed Plaintiff that it was terminating the lease to the Town-owned fire station and instructed Plaintiff to vacate the premises. Plaintiff alleges that the Town then seized equipment owned by Plaintiff and stopped Plaintiff from providing fire suppression and emergency medical services to the Town. Up until that time, Plaintiff was one of the four fire companies providing fire suppression and emergency medical services to the Town. After Plaintiff vacated the fire station, the Town placed the equipment at the station under the control of another fire company in the Town in order to maintain public safety in the Chopmist Hill area of Scitutate.

Plaintiff received its funding from several sources: (1) an annual Town appropriation, (2) grants (federal, state, and private); (3) donations; (4) fund-raising activities, and (5) miscellaneous other sources. Plaintiff submitted an annual budget to the Town. The budget outlined what Plaintiff spent in the previous year and the major expenditures planned for the coming year. Each year, however, the Town advised Plaintiff of the maximum percentage increase in the Town appropriation that Plaintiff could request.

Town voters approved the Town budget on an annual basis. Once the budget was approved, Plaintiff received its appropriation in four quarterly payments. Plaintiff deposited the quarterly appropriation payments in a single checking account into which Plaintiff also deposited income from its other non-municipal sources. Plaintiff purchased equipment with checks drawn on that account. Although the Town oversaw spending in Town departments, once Plaintiff received its appropriation, the Town did not place any requirements or restrictions on Plaintiff's use of the appropriation. If requested, the Town could, but was not obligated to, grant an additional appropriation to Plaintiff.

During the years it serviced the Town, Plaintiff applied for grants. Some grant applications were submitted solely by Plaintiff while others were submitted by one fire company on behalf of all the fire companies in the Town. On occasion, a Town official assisted in the preparation of a grant application. The funds from grants were forwarded directly to the fire department applicants.

In or about 1998, Plaintiff purchased a fire-brush truck at a cost of $54,790.42. The brush truck was purchased by Plaintiff with funds obtained through fund-raising activities.[2] The brush truck was titled in the names of both Plaintiff and the Town.[3] The Town paid to insure the truck. Both the Town and Plaintiff paid for repairs to the truck.

Gaffney compiled an eight-page list ("Gaffney list") identifying the equipment at the fire station on the date Plaintiff vacated the station. The list summarizes equipment purchased by Plaintiff (and repairs paid for by Plaintiff) from 1994 through mid-2009.[4] The equipment on the Gaffney list was used by Plaintiff to provide fire suppression services to the Town.

The Gaffney list includes: (1) several items that were purchased solely with funds received from federal grants; (2) one item purchased solely with funds received from a state grant; and (3) several items purchased solely from funds received from a private grant. The remaining property on the Gaffney list was purchased by Plaintiff using a combination of income

---

[2] Although the parties agreed that the "[b]rush [t]ruck was paid for from a separate account[,]" the parties fail to identify this "separate account." Stipulation at ¶ 115 n.6.

[3] The title to the brush truck lists the owner as "Town of Scituate Chopmist Hill Fi [sic]." Summary Judgment Statement of Facts, Exhibit A; Docket 14-1. Although the parties agree that the brush truck is titled in the name of both the Town and Plaintiff, the Court recognizes that a plausible reading of the title could also suggest that the Town is the sole owner of the brush truck.

[4] The brush truck is on the Gaffney list. The Court also acknowledges that some of the equipment on the Gaffney list has been returned to Plaintiff.

4

received from public grants, private grants, fund-raising activities, and Town appropriations.

In 1998, the Town appropriated $28,250 to Plaintiff; by 2008 the appropriation had risen to $51,782. The parties agree that Plaintiff purchased equipment with whatever funds were remaining after Plaintiff paid for operating costs. The parties define operating costs as those costs associated with heat, utilities, training, etc.

### III.  Contentions

Plaintiff contends that because it purchased the equipment on the Gaffney list, it owns the equipment. Plaintiff argues that Defendants' alleged seizure of its property interfered with its ownership interest in the property and thus violated the Fourth and Fourteenth Amendments and state conversion and replevin laws. Defendants contend that the facts do not establish that Plaintiff owns the equipment.

### IV.  Analysis

#### A.  Fourth Amendment

In order to succeed on its Fourth Amendment claim, Plaintiff must show that (1) Defendants seized its property, and (2) that the seizure was unreasonable. Soldal v. Cook County, Illinois, 506 U.S. 56, 61-62 (1992). A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." Id. at 61 (internal quotation marks and citation omitted). It goes without saying that Plaintiff bears the burden of proving that Defendants have violated constitutional protections. Rogers v. Mulholland, ____ F. Supp. 2d ____ (D.R.I. 2012).

5

Plaintiff argues that Defendant interfered with its ownership[5] interest in the equipment on the Gaffney list. Plaintiff argues that its ownership of the equipment is established by virtue of the fact that over the years, Plaintiff used Town appropriations *solely* to cover operating expenses while funds from other sources were used to finance equipment purchases. To support this claim, Plaintiff cherry picks financial information from a five-year period.[6]

Plaintiff admits that it had *one* operating account and *all* of its income was co-mingled in that account. Thus, it is impossible for Plaintiff to identify the source of the funds that it used to pay for operating expenses. As a result, Plaintiff's operating expense argument is based on pure speculation and is a non-starter. Furthermore, the financial information in the agreed statement of facts that Plaintiff relies upon to support its argument is confusing, inconsistent and inaccurate.[7] The Court concludes that Plaintiff's operating expense argument is simply not supported by the record.

Plaintiff also argues that it owns the equipment bought with funds received from grants. Plaintiff, however, ignores the underlying purpose and intent of grant income; that is, the funds were given by the grantor not for Plaintiff's benefit but for the benefit of the Town. Plaintiff also

---

[5] As noted above, Plaintiff argues that it *owns* the equipment. In its post-trial memorandum, however, Plaintiff adds one sentence suggesting that "[e]ven if [the] Court were to rule [Plaintiff] is not the owner of the equipment [Plaintiff's] possessory interest alone is sufficient to trigger Fourth Amendment protection." Plaintiff's Post-Trial Memorandum at 9-10; Docket at # 39. Plaintiff, however, does not develop a possessory interest argument for the Fourth Amendment claim or for any other claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[6] The parties produced financial information from 1998 to 2008. See Stipulation at ¶¶ 115, 116.

[7] For example, in one instance the parties agree that for 2004 and 2005, Plaintiff expended $27,684.04 and $26,723.84, respectively, for equipment purchases. See Stipulation at ¶ 115. However, the parties also agree that, for the same years, Plaintiff expended $34,436.44 and $21,462.74, respectively, for equipment purchases. See Stipulation at ¶ 116.

ignores the fact that some of the grants were not submitted in its name. For example, one grant was submitted in the name of the North Scitutate Fire Department. That grant application stated that the grant would be shared by all four fire departments that serve the Town. The fact that the grant was applied for by another fire company in the Town rebuts Plaintiff's position that it owned equipment purchased from funds received from that grant. Furthermore, the fact that the grant was to be shared by all the fire companies in the Town supports the premise that the underlying purpose and intent of the grant were to benefit the Town and not any one fire company.

The grant applications that were submitted as evidence in this case make clear that the grant monies were provided for the benefit of the Town. Moreover, Gaffney testified that the items purchased with the money from grants were for the benefit of all the citizens in the town of Scituate. For example, in a grant application submitted solely by Plaintiff, Plaintiff represented that the grant would "benefit all the citizens . . . of the town . . . ." Exhibit 4-28. Furthermore, the public donations received by Plaintiff at the various fund-raising activities were also intended to benefit the Town and not Plaintiff. Thus, the underlying purpose and intent behind both the donations and the grant monies received by Plaintiff were to benefit the Town, thus refuting Plaintiff's ownership claim.

The Brush truck was purchased entirely with funds received by Plaintiff from fund-raising activities. As noted above, however, the purpose and intent behind those funds were to benefit the Town and not Plaintiff. Furthermore, the manner in which the truck was titled and the fact that the Town paid to insure the truck, and paid for repairs on the truck are additional indicia of the Town's ownership.

7

Plaintiff, primarily relying on New Windsor Volunteer Ambulance Corps, Inc., v. Meyers, 442 F.3d 101 (2d Cir. 2006), contends that case law supports its claim that it owns the equipment. In New Windsor, plaintiff volunteer ambulance company and the town of New Windsor entered into a series of contracts from 1971 through 1985. Id. at 106. The contracts called for the plaintiff to provide emergency medical services to the town in return for consideration paid by the town. Id. The town purchased an ambulance to be utilized by the plaintiff. Id. Although the plaintiff continued to provide services to the town, no written contract was executed after 1985. Id. at 107. From the payments the plaintiff received from the town, it purchased additional vehicles, equipment and supplies. Id. The plaintiff held title to the vehicles and insured them and they were housed in the town garage. Id.

In 2004, the town terminated the relationship and seized the vehicles and other equipment. Id. The plaintiff sued the town alleging violations of the Fourth and Fourteenth Amendments and state law. Id. at 108. The trial court determined that, although the parties had not entered into a written contract since 1985, there was no evidence that the contractual relationship had been terminated. Id. at 109. The court concluded that the town and the plaintiff had remained parties to a contract. Id. The trial court held that the plaintiff owned the equipment and the town appealed. Id.

The Second Circuit concluded that the district court had not erred in finding that "as a matter of contract, the [plaintiff] owned the ambulances and other seized equipment." Id. at 113 (emphasis added). The court concluded that in

> sum, the record furnishes ample support for the inferences that the Town paid the [plaintiff] pursuant to a contract for services that could not be available without expensive equipment; that the moneys paid were intended to and did become the property of the [plaintiff]; and that the [plaintiff] thus purchased the ambulances

8

and other equipment out of its own funds and thereby owned the vehicles and equipment. The trial court's finding that as a matter of contract, the parties intended the [plaintiff] would own the ambulances and other equipment is well supported by the evidence.

Id. at 114 (emphasis added).

In New Windsor, the Court determined that the contractual relationship between the Plaintiff and the municipality led to the plaintiff obtaining a property interest in the equipment purchased by the plaintiff. In this matter, however, the parties agree that Plaintiff did not have a contract with the Town for fire suppression and emergency medical services. See Stipulation at ¶ 4. New Windsor does not aid Plaintiff's ownership argument.[8]

This Court concludes that Plaintiff has failed its burden of showing that it owned the equipment. Consequently, Plaintiff's Fourth Amendment claim fails.

## B. Fourteenth Amendment

Plaintiff also contends that Defendants violated its Fourteenth Amendment due process rights. In order to establish a procedural due process claim, Plaintiff must show (1) that it has a property interest, and (2) that Defendants deprived Plaintiff of that interest without constitutionally adequate process. Chopmist Hill Fire Department v. Town of Scituate, 780 F. Supp. 2d 179, 191 (D.R.I. 2011). As noted above, Plaintiff has failed to carry its burden that it owns the equipment in dispute. Thus, Plaintiff has failed to establish a property interest in the equipment. As a result, the due process claim fails.

---

[8] The Court also finds that the additional cases cited by Plaintiff do not support its ownership argument because the additional cases either (1) involve a contract, (2) and/or the question of ownership of property was not specifically before the court, (3) and/or it was undisputed that one party held title to the property. See e.g. Lish v. Coolville Volunteer Fire Department, 652 N.E.2d 7 (Ohio Ct. Com. Pl. 1995) (negligence action; parties subject to contract); Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township, Bucks County, Pennsylvania, 365 A.2d 880, 882 (Pa. Commw. Ct. 1976) ("it is undisputed that the real and personal property . . . are titled in the name of appellant").

9

C. State Law Claims

Plaintiff also claims that Defendants violated state conversion and replevin laws. "[I]n order to sustain an action for conversion of personal chattels, a plaintiff must demonstrate an ownership or possessory interest in the property at the time of conversion." DeChristofaro v. Machala, 685 A.2d 258, 263 (R.I. 1996). Likewise, whenever goods or chattels of more that $5,000 "shall be unlawfully taken or unlawfully detained from the owner or from the person entitled to possession . . . the owner or the other person may cause the same to be replevied . . . ." R.I. Gen. Laws § 34-21-1. Because this Court has determined that Plaintiff has failed to carry its burden that it owns the equipment, Plaintiff's claims of conversion and replevin fail.[9]

IV. Conclusion

Plaintiff has failed to meet its burden of proof. For the reasons set forth, the Clerk is directed to enter judgment in favor of Defendants.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
June 28 , 2012

---

[9] The Court need not address any possessory interest argument in either Plaintiff's Fourteenth Amendment claim or the conversion and replevin claims because, as noted above, Plaintiff failed to develop a possessory interest argument.